IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VOLUNTEER FIREMEN'S INSURANCE SERVICES, INC., ARTHUR J. GLATFELTER AGENCY, INC. d/b/a GLATFELTER INSURANCE GROUP, and GLATFELTER UNDERWRITING SERVICES, INC. d/b/a GLATFELTER PUBLIC PRACTICE,** | : : : : : : : : : | **CIVIL NO. 1:12-CV-2016** |
| **Plaintiffs,** | : | |
| **v.** | : : | **Judge Sylvia H. Rambo** |
| **PAUL R. FULLER and ALTERIS INSURANCE SERVICES, INC.** | : : : | |
| **Defendants** | : : | |

## M E M O R A N D U M

Plaintiffs filed this action asserting various causes of action arising from Defendants' alleged violation of a covenant not to compete. Presently before the court is Defendants' motion for judgment on the pleadings. (Doc. 19.) Also pending before the court is Plaintiffs' motion for a preliminary injunction. (Doc. 7.) For the reasons set forth below, the court will grant Defendants' motion for judgment on the pleadings and will deny as moot Plaintiffs' motion for a preliminary injunction.

I.     **Background**[1]

a.     **Parties**

Plaintiff, Volunteer Firemen's Insurance Services, Inc. ("VFIS"), is a Pennsylvania corporation and a wholly-owned subsidiary of Arthur J. Glatfelter

---

[1] As required on a motion for judgment on the pleadings, the following facts are taken from Plaintiffs' complaint (Doc. 1), Defendants' answer (Doc. 18), and any exhibits attached to the pleadings, unless indicated otherwise.

Agency, Inc. ("Glatfelter").[2] (Doc. 1, Compl. ¶ 3.) Plaintiff Glatfelter is a Pennsylvania corporation that is in the business of providing products to special purpose public and governmental entities and non-governmental entities, including water districts, mutual water companies, investor owned utilities, sewer districts, irrigation districts, reclamation districts, conservation districts, cemetery districts, community services districts, memorial districts, fire protection districts, volunteer fire companies, fire departments, fire associations, and ambulance or rescue squads. (*Id.* ¶ 11.)

Defendant Paul Fuller is a resident of California and a former employee of Glatfelter. (*Id.* ¶¶ 7, 34.) Defendant Alteris Insurance Services, Inc. ("Alteris") is a Massachusetts corporation and a wholly-owned subsidiary of Argo Group International Holdings, Ltd. (*Id.* ¶ 8.) Alteris provides products and services to large individual governmental entities and self-insured governmental pools. (*Id.* ¶ 12.) Alteris is a direct competitor of Glatfelter. (*Id.* ¶ 13.)

### b. **Facts**

Resolution of this dispute hinges largely on the interplay between three agreements, and the differing restrictive covenants contained therein, that pertain to the sale of business assets to VFIS and Fuller's employment with Glatfelter. The course of events that led to this action began in May, 2003, when VFIS purchased certain insurance business assets of the S.N. Potter Insurance Agency, Inc., and its key employees, most particularly the Rural Special Districts Insurance Services

---

[2] For simplicity, the court will refer to Arthur J. Glatfelter, Inc., doing business as Glatfelter Insurance Group ("Glatfelter Agency"), and Glatfelter Underwriting Services, Inc., doing business as Glatfelter Public Practice ("Glatfelter Underwriting"), collectively as "Glatfelter" unless otherwise required.

("RSDIS") business, which was developed and maintained by Fuller. (*Id.* ¶¶ 14, 15.) Glatfelter used the purchase of the RSDIS business to enter the specialty insurance line that caters to water districts. (*Id.* ¶ 16.)

The first document at issue is a 2003 Agreement and Bill of Sale ("2003 Sales Agreement") that was executed by Fuller and VFIS. (*Id.* ¶ 17.) In that document, VFIS purchased the goodwill associated with Fuller's years of insurance experience in developing a book of insurance business related to water districts and other special purpose governmental entities. (*Id.* ¶ 17.) The 2003 Sales Agreement provided, *inter alia*, that in exchange for payment of $225,000.00 by VFIS, Fuller agreed to be bound by a five-year non-compete term. (*Id.* ¶ 18.) The covenant not to complete provided:

> [D]uring the Non-Compete Term, Fuller shall not in the Territory, directly or indirectly:
>
> (I) (a) with respect to Special Districts insurance business, contact, solicit, form a business relationship with, solicit, divert, take away, or attempt to divert or take away from VFIS any Customer, (b) attempt to cause or cause any Customer to refrain from patronizing VFIS, or (c) assist any other person or entity in an attempt to do any of the foregoing either personally, or by means of or through any corporation, partnership, agent, employee or other representative, and shall not directly or indirectly own, manage, operate, join or control any business which attempts to or actually commits any of the foregoing forbidden acts; or
>
> (ii) compete with VFIS or any agent acting on behalf of VFIS in the actual or attempted solicitation, sale, placement or procuring of insurance for any Special District either personally or by means of or through any corporation, partnership, agent, employee or other representative, and shall not directly or indirectly own, manage, operate, join, control, or participate in the ownership, management, operation or control of any business which attempts to or actually solicits, sells, places

> or procures such insurance for such term and as otherwise
> described in greater detail immediately above.

(*Id.* ¶ 19 & Ex. A; 2003 Sales Agreement, § 4.)  The 2003 Sales Agreement defines

the "Non-Compete Term" as "a period of five (5) years commencing on the effective

date hereof or the termination of Fuller's employment with VFIS, if any, whichever

occurs later . . . ."  (Compl., ¶ 20; 2003 Sales Agreement, § 2(D).)

The second key document at issue, a 2003 Employment Agreement,

was executed contemporaneously[3] with the execution of the 2003 Sales Agreement

by VFIS and Fuller.  (*See* Doc. 18-2, 2003 Employment Agreement.)[4]  Crucial to the

facts of this case, the 2003 Employment Agreement was attached to and

incorporated into the 2003 Sales Agreement.  (*See* 2003 Sales Agreement, § 2(B).)

The 2003 Employment Agreement defined a "Non-Solicitation Term" as "a period

of two (2) years commencing upon the termination for any reason of Employee's

employment . . . ."  (2003 Employment Agreement, § 1(C).)  Pursuant to the terms of

the 2003 Employment Agreement, Fuller agreed not to "(a) contact, solicit, divert,

take away, or attempt to divert to take away from Employer any Customer, (b)

attempt to cause or cause any Customer to refrain from patronizing Employer, or (c)

assist any other person or entity in an attempt to do any of the foregoing either

personally or by means of or through any corporation, partnership, agent, employee

or other representative . . . ."  (*Id.* § 6.)

---

[3]  The 2003 Employment Agreement is dated May 1, 2003.  The 2003 Sales Agreement is dated May 6, 2003, but the Agreement indicates that it was made effective on May 1, 2003.

[4]  Although the 2003 Employment Agreement is not attached to Plaintiffs' complaint, it is attached as Exhibit B to Defendants' answer and therefore properly considered on a motion for judgment on the pleadings.  (Doc. 18-2.)  In any event, the existence or authenticity of the 2003 Employment Agreement has not been challenged.

From the time the 2003 Agreements were implemented until December 31, 2007, Fuller worked full time for Glatfelter, mostly continuing the RSDIS business purchased by Glatfelter. (Compl. ¶ 31.) Glatfelter then promoted Fuller to President of Wholesale Speciality Operations, effective January 1, 2008. (*Id.* ¶ 32.) On June 2, 2008, Fuller was named Vice President of VFIS. (*Id.*) On January 2, 2009, Fuller became President of VFIS. (*Id.*) In those positions, Fuller had unfettered access to all information regarding Glatfelter's wholesale operations. (*Id.*) Fuller also had access to and knowledge of Glatfelter's confidential and proprietary information as well as knowledge of customer identifications and locations. (*Id.* ¶ 33.)

Upon Fuller's promotion, he and Glatfelter executed the third document at issue, a 2008 Employment Agreement.[5] This Agreement defined a "Non-Compete Term" as "a period of three (3) years commencing upon the termination for any reason of Employee's employment with Employer." (Doc. 18-1, 2008 Employment Agreement, § 1(E).) The three-year Non-Compete Term is applicable to the Agreement's non-solicitation clause[6] and non-compete clause.[7]

---

[5] Although the 2008 Employment Agreement is not attached to Plaintiffs' complaint, it is attached as Exhibit A to Defendants' answer and therefore properly considered on a motion for judgment on the pleadings. (Doc. 18-1.) As with the 2003 Employment Agreement, the existence or authenticity of the 2008 Employment Agreement has not been challenged.

[6] The non-solicitation clause provides as follows:

Section 6. Employee Solicitation. In the event of termination of Employee's employment with Employer for any reason, with or without cause, during the Non-Compete Term, Employee shall not, on behalf of himself or on behalf of any other person, firm, or corporation, solicit any of the employees of Employer and Employee shall not in any way, directly, or indirectly, for himself or on behalf of any other person, firm or corporation, attempt to or actually solicit,

(continued...)

The 2008 Employment Agreement also contains an "entire agreement" or "integration clause" which states as follows:

> Section 16. Entire Agreement. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and there are no agreements, understandings, restrictions, warranties, or representations between the parties relating to this subject matter other than those in this Agreement. *This Agreement supercedes all prior agreements, understandings, discussions, or negotiations relating to this subject matter.*

---

[6] (...continued)
divert, or take away any employees of the Employer.

(2008 Employment Agreement, § 6.)

[7] The non-compete clause provides as follows:

Section 7. Loyalty and Non-Compete.

A. During the term of Employee's employment with Employer, Employee shall not compete, directly or indirectly, with Employer in the sale of any insurance product offered by Employer.

B. It is understood and agreed by the parties that Employee's position with Employer is on of particular uniqueness and importance with respect to Employer's Business. Therefore, in the event of termination of Employee's employment with Employer for any reason, with or without cause, during the Non-Compete Term, Employee shall not, directly or indirectly, compete with Employer or any of Employer's local brokers or sub-producers in the Territory in the actual or attempted solicitation, sale, placement or procuring of insurance or insurance products for any of Employer's Business, either personally or by means of or through any corporation, partnership, agent, employee or other representative, and shall not directly or indirectly work for, solicit for, own, manage, operate, join, control, or participate in the ownership, management, operation or control of any business which attempts to or actually solicits, sells, places or procures insurance or insurance products for any of Employer's Business for such term and as otherwise described in greater detail immediately above.

(*Id.* § 7.)

(2008 Employment Agreement, ¶ 16 (emphasis added).)

On July 10, 2009, Fuller voluntarily resigned from his employment with Glatfelter. (Compl. ¶ 34.) After Fuller resigned from Glatfelter, he started a special insurance program for wineries, which Plaintiffs do not alleged violated the terms of any covenant not to compete. (*Id.* ¶ 36.) Fuller's winery program was subsequently purchased by Alteris, and Fuller continued to work thereafter for Alteris. (*Id.*) Beginning in August, 2012, Fuller engaged in a series of activities that Plaintiffs allege were violations of the five-year non-compete clause in the 2003 Sales Agreement. For example, the complaint alleges[8] that in August, 2012, several Glatfelter customers moved their Special District business to Alteris as a result of Fuller and Alteris's solicitation and diversion of insurance business accounts from Glatfelter. (*Id.* ¶¶ 37, 39.) Glatfelter alleges to have lost insurance business accounts to Alteris from at least 18 insurance-producer customers and 20 insurance-purchasing customers since August, 2012. (*Id.* ¶¶ 44, 46.) Plaintiffs allege that the customers switched because of false statements from Alteris and because Fuller improperly used confidential and proprietary information owned by Glatfelter. (*Id.* ¶ 45.) Plaintiffs further allege that Fuller and other representatives of Alteris told Glatfelter customers that everyone involved in creating or marketing the RSDIS program at Glatfelter had left Glatfelter and was now working at Alteris and Argo Group. (*Id.* ¶ 45.)[9]

---

[8] For the purposes of deciding the motion for judgment on the pleadings, the court will assume the allegations to be true.

[9] Aside from this allegation, Plaintiffs' complaint is otherwise devoid of specific allegations regarding which customers were lost, what false statements are attributable to Defendants, or what type
(continued...)

On October 5, 2012, Glatfelter sent Fuller and Alteris a letter advising them of Fuller's violation of the covenant not to compete and confidentiality provisions of the 2003 Sales Agreement and their inappropriate use of information obtained from Glatfelter. (*Id.* ¶ 47.)

### c.   **Procedural History**

On October 5, 2012, Plaintiffs filed a complaint setting forth five claims: (1) breach of contract against Fuller (Count I); (2) negligent interference with existing and prospective contractual relations against Alteris (Count II); (3) intentional interference with existing and prospective contractual relations against Fuller and Alteris (Count III); (4) unfair competition against Fuller and Alteris (Count IV); and (5) preliminary and permanent injunctive relief (Count V). (Doc. 1.) Plaintiffs also filed a motion for a preliminary injunction and brief in support on November 9, 2012 (Docs. 7 & 8), to which Defendants responded on December 7, 2012. (Doc. 26.) Following a conference call with the parties, the court issued an order dated November 15, 2012, scheduling a hearing on the motion for preliminary injunction for January 4, 2013. (Doc. 15.) In the interim, Defendants filed an answer and the instant motion for judgment on the pleadings and brief in support on November 19 and 20, 2012. (Docs. 18, 19 & 20.) On December 5, 2012, Plaintiffs filed a brief in opposition to the motion for judgment on the pleadings (Doc. 25), to which Defendants filed a reply on December 11, 2012 (Doc. 30). Accordingly, the motion is ripe for disposition.

---

[9] (...continued)
of confidential or proprietary information was used, beside the obvious inference to customer identification.

## II.	**Legal Standard**

Under Federal Rule of Civil Procedure 12(c), once the pleadings are closed, a party may move for judgment on the pleadings "within such time as to not delay the trial." Fed. R. Civ. P. 12(c).[10] The standard of review for a motion for judgment on the pleadings is identical to that of the motion to dismiss under Federal Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *Cannon v. United States*, 322 F. Supp. 2d 636, 636 (W.D. Pa. 2004); *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001). The only notable difference between these two standards is that the court, on a motion for judgment on the pleadings, reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings. 2 Moore's Fed. Practice Civil § 12.38 (2004); *Prima v. Darden Restaurants, Inc.*, 78 F. Supp. 2d 337, 341-42 (D.N.J. 2000). Despite this difference, courts in this circuit have consistently stated that the distinction between the two standards is "merely semantic." *Christy v. We The People Forms & Serv. Ctrs.*, 213 F.R.D. 235, 238 (D.N.J. 2003); *see Smith v. City of Phila.*, 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004) (citing *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995) ("A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")).

---

[10]	Federal Rule of Civil Procedure 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Phillips v. Cnty. of Allegheny, et al.*, 515 F.3d 224, 233 (3d Cir. 2008). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

III.     **Discussion**

Defendants have moved for dismissal of each of Plaintiffs' claims. Central to most of Plaintiffs' claims is the allegation that Defendants have breached

their obligations set forth in the non-compete clause in the 2003 Sales Agreement, which is governed by a five-year Non-Compete Term. Defendants emphatically refute this point, arguing that the 2003 Sales Agreement was expressly superseded by the 2008 Employment Agreement, and Defendants have not violated the three-year non-compete term contained therein. Because resolution of this issue will resolve most of Plaintiffs' claims, the court will address this issue first before addressing Plaintiffs' the individual causes of action.

If the court determines that the five-year restrictive covenant in the 2003 Sales Agreement is applicable, it follows that Fuller would have been prohibited from competing with Plaintiffs until July 10, 2014, or five years from the date of his resignation. If, on the other hand, the three-year restrictive covenant in the 2008 Sales Agreement is applicable, then Fuller's prohibition on competing with Plaintiffs would have expired on July 10, 2012. Crucially, the earliest date of any alleged wrongdoing by Fuller is August, 2012, just outside the three-year time frame, but well within the five-year time frame. It is axiomatic that Plaintiffs argue for application of the five-year covenant in the 2003 Sales Agreement, while Defendants argue for application fo the three-year covenant in the 2008 Employment Agreement.

The parties' arguments are relatively straightforward in this regard. Defendants argue that the integration clause in the 2008 Agreement, which states "[t]his Agreement supercedes all prior agreements, understandings, discussions, or negotiations relating to this subject matter" (2008 Employment Agreement, § 16) renders the 2003 Sales Agreement superseded and thus precludes the application of the five-year restrictive covenant set forth therein. Plaintiffs, meanwhile, argue that

the integration clause only applies to the agreements relating to the same subject matter, and because the 2003 Sales Agreement and the 2008 Employment Agreement cover different subject matters, the five-year restrictive covenant remains in effect. Resolution of this issue requires a careful reading of the 2008 Employment Agreement, the 2003 Sales Agreement, and the 2003 Employment Agreement.

In determining which restrictive covenant applies, there are several principles that guide our analysis.[11] Generally, the parties are bound by the terms of the contract, "[a]bsent illegality, unconscionableness, fraud, duress, or mistake by the parties bound by the terms of the contract." *Mellon Bank, N.A. v. Aetna Bus. Credit*, 619 F.2d 1001, 1009 (3d Cir. 1980) (citing *Peter J. Mascaro Co. v. Milonas*, 166 A.2d 15 (Pa. 1960)). "In construing a contract, a court's paramount consideration is the intent of the parties." *Id.* (quoting *O'Farrell v. Steel City Piping Co.*, 403 A.2d 1319, 1324 (Pa. Super. Ct. 1979)); *see also Glen-Gery Corp. v. Warfel Const. Co.*, 734 A.2d 926, 929 (Pa. Super. Ct. 1999)). Pennsylvania follows the plain meaning rule of contract interpretation, such that "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." *Sloan & Co. v. Liberty Mut. Co.*, 653 F.3d 175, 180 (3d Cir. 2011) (quoting *Steuart v. McChesney*, 444 A.3d 659, 661 (Pa. 1982)).

---

[11] Because Plaintiffs filed this suit invoking this court's diversity jurisdiction under 28 U.S.C. § 1332, this court is obligated to apply Pennsylvania law to the substantive issues in this case. *See Erie v. Tompkins*, 304 U.S. 64 (1938). Moreover, there does not appear to be any dispute between the parties that Pennsylvania law governs.

At the outset, the court notes that there are no allegations of illegality, unconscionableness, fraud, duress, or mistake with regard to the terms of the contracts, and thus the court will hold the parties bound to the plain meaning of the unequivocal terms set forth in the agreements. Having reviewed each agreement, the court finds that the integration clause in the 2008 Employment Agreement leaves very little room for any argument in favor of the applicability of any prior agreement. The primary argument advanced by Plaintiffs is that the integration clause only supersedes prior agreements *of the same subject matter* and thus the 2008 Employment Agreement does not supersede the 2003 Sale Agreement. The court disagrees.

There is no dispute that the 2008 Employment Agreement and the 2003 Employment Agreement cover the same subject matter, *to wit* Fuller's employment obligations and responsibilities, compensation, restrictions on use of proprietary information, and post-employment obligations. Plaintiffs argue, however, that the 2003 Sales Agreement is applicable here because it covers an altogether different subject matter from the 2008 Employment Agreement in as much as the essence of the 2003 Sales Agreement is the sale of Fuller's "personal goodwill associated with years of insurance business experience developing a book of insurance business respecting special purpose governmental entities and similar entities generally known as Special Districts . . . ." (Doc. 25, Pl.'s Br. in Opp., p. 7 of 30) (quoting 2003 Sales Agreement, § R.1.) In other words, Plaintiffs argue that the subject of the 2003 Sales Agreement is the purchase Fuller's goodwill associated with the RSDIS business, which has nothing to do with Fuller's employment with Glatfelter or his post-employment obligations.

Plaintiffs' argument overlooks a crucial point: the 2003 Sales

Agreement expressly incorporates the 2003 Employment Agreement by stating:

> The term "Goodwill" as used in this Agreement shall mean all of Fuller's right, title and interest in and to all of his personal goodwill and all his other intangible assets related to insurance business for Special Districts, *as such term is described in greater detail together with related contractual promises, all set forth in Exhibit "A"* [the 2003 Employment Agreement] *attached hereto and made part hereof.*

(2003 Sales Agreement, §2 (B).) The plain meaning of this express incorporation

logically dictates that the agreements be construed as a single agreement pertaining

not only to the sale of the RSDIS business to VFIS, but also Fuller's employment

terms and post-employment obligations. Such a reading supports the contention that

the 2008 Employment Agreement and the 2003 Agreements pertain to the same

subject matter, thus rendering the 2003 Agreements superseded.

Plaintiffs, however, raise several arguments to the contrary that the

court shall address. Plaintiffs cite to *Bowlby v. Carter Mfg. Corp.*, 138 F. Supp. 2d

182 (D. Mass. 2001) in support of its contention that the 2003 Sales Agreement and

2003 Employment Agreement are two separate agreements. In *Bowlby*, the court

reviewed an employment agreement that was a condition precedent to a stock

purchase agreement. The two agreements were in conflict with each other; the

purchase agreement contained an arbitration clause while the employment

agreement did not. When the employee brought suit against the employer in federal

court, the employer sought to invoke the arbitration provision in the purchase

agreement. The employer argued that the two agreements must be read together

because the preamble to the employment agreement specifically referenced the

purchase agreement and the nature of the execution of the two agreements indicated

that they constituted a single, overarching agreement. The court disagreed, finding that the two agreements should be construed independently. In support, the court cited the integration clause in the employment agreement, which stated that the employment agreement represented the entire agreement between the parties concerning that subject matter.

  *Bowlby* is distinguishable from the case at bar. First, the employment agreement merely referenced the purchase agreement and did not expressly integrate the purchase agreement. Here, the 2003 Employment Agreement was attached and "made a part hereof" to the 2003 Sales Agreement. Moreover, in *Bowlby*, the choice of law provisions of the two contracts were in direct contradiction with each other (*e.g.*, rules of the American Arbitration Association vs. Massachusetts law). Here, although a quick review of the 2003 Agreements might suggest a conflict between the restrictive covenants (*e.g.*, five years vs. two years), a closer reading reveals that the 2003 Sales Agreement contains a "Non-Compete Term" whereas the 2003 Employment Agreement contains a "Non-Solicitation Term."[12] Thus, the two contracts are not in conflict with each other. Lastly, the issue the court faces here, namely which contract governs when a subsequent contract with its own integration clause is executed, was not at issue in *Bowlby*.

  Plaintiffs reliance on *Hough Assocs., Inc. v. Hill*, 2007 Del. Ch. LEXIS 5, at *5 (Del. Ch. Jan. 17, 2007) is likewise misplaced. As in *Bowlby*, in *Hough*, the court examined two agreements, a stock purchase agreement that did not contain an

---

[12] This is a subtle, but critical distinction. A non-compete clause bars a former employee from competing against a former employer for a specified amount of time. A non-solicitation clause, meanwhile, is more narrowly aimed at preventing an employee from soliciting his or her former clients, but the employee is otherwise able to immediately start work in the same industry in the same geographic area.

arbitration clause and a non-competition agreement that did contain an arbitration clause, and found them to be two separate, independent agreements. This case is distinguishable for the same reasons as *Bowlby*: (1) there is no indication that the parties expressly integrated one agreement into the other, (2) there is a direct conflict between the clauses (arbitrate vs. no arbitration clause), and (3) there is no third, subsequent agreement with an integration clause. The court also relied on the non-competition agreement integration clause, which did not reference the stock purchase agreement. In short, these cases are inapposite to the case at bar.

Plaintiffs also cite to *Worldwide Auditing Servs. v. Richter*, 587 A.2d 772 (Pa. Super. Ct. 1991), and *Scobell Inc. v. Schade*, 688 A.2d 715 (Pa. Super. Ct. 1997), for the proposition that a restrictive covenant contained in an agreement for the sale of a business is subjected to a less rigorous reasonableness examination than restrictive covenants in employment agreements. It appears that Plaintiffs advance this argument to demonstrate that Plaintiffs and Fuller intended to execute two independently-functioning agreements in May 2003. Although the court understands how this could conceivably indicate a reason for entering into separate contracts with differing restrictive covenants, this argument is tenuous and falls short of clearly indicating the parties' intent. A much clearer indication of intent is the unequivocal incorporation of the 2003 Employment Agreement by the 2003 Sales Agreement, which requires the 2003 Agreements be construed as one agreement.

The court further finds that construing the 2003 Employment Agreement and the 2003 Sales Agreement together as a single agreement comports with principles of Pennsylvania law. For example, under Pennsylvania law, where

one contract incorporates and refers to another, both must be construed together. *See Kropa v. Cabot Oil & Gas Corp.*, 609 F. Supp. 2d 372, 376 (M.D. Pa. 2009) (quoting *Shehadi v. N.E. Nat'l Bank*, 378 A.2d 304, 306 (Pa. 1977)). Likewise, when separate contracts are entered into at the same time as part of the same business transaction, they are to be construed together. *See id.*; *see also Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir.1985) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties. [T]he presence of integration clauses in separate agreements is not a bar to the agreements being construed together as long as the agreements are part of the same business transaction."); *Neville v. Scott*, 127 A.2d 755, 757 (Pa. 1956) (finding that where two agreements are made as part of one transaction, they will be read together to express the essential elements of the parties' undertaking, notwithstanding the presence of an integration clause in the second agreement).

Plaintiffs argue that a holding that the 2008 Employment Agreement supersedes the 2003 Agreements would produce an "absurd result" because, by logical extension of the court's reasoning, the 2003 Sale Agreement's integration clause would have caused the 2003 Employment Agreement, executed just five days earlier, to be superseded. (Doc. 25 at p. 24 of 30) (citing *Good Will Hunting Club, Inc. v. Range Res., Inc.*, 2012 U.S. Dist. LEXIS 27349 (M.D. Pa. Mar. 1, 2012) ("A contract should not be interpreted in a manner that renders provisions meaningless, superfluous, unreasonable, contradictory or would lead to absurd results.").) The court disagrees. First, interpreting the 2003 Agreements as one agreement would

not result in the 2003 Sales Agreement superseding the 2003 Employment Agreement. To the contrary, they are to be read in conjunction with each other. Second, as further discussed below, the court believes that a finding that the 2008 Employment Agreement supersedes the 2003 Agreements is reasonable and practical, and would produce a logical outcome. Plaintiffs also argue that such a holding would produce an absurd result because the parties continued to operate under the 2003 Sales Agreements even after Defendants claim it was superseded as a result of Fuller's acceptance of an upward adjustment payment contemplated by Section 3(E)(1) of the 2003 Sales Agreement.[13] The court is not convinced that acceptance of this payment invalidates the holding that the 2008 Employment Agreement supersedes the 2003 Agreements. First, the payment was completely unrelated to the post-employment restrictive covenants at issue here. Further, a review of the 2003 Sales Agreement shows that this payment was an adjustment for work already completed and that it was explicitly scheduled to be made on or before March 31, 2008. (2003 Sales Agreement, § 3(E)(1).)

In short, having carefully reviewed the terms of the 2003 Agreements, the court finds that the 2003 Sales Agreement unequivocally attaches and incorporates the 2003 Employment Agreement. Thus, it is reasonable to conclude from the plain meaning of the terms of the 2003 Sales Agreement that the parties intended the 2003 Agreements to be read together as a single agreement. The court finds no compelling reason to interpret the two agreements otherwise. Moreover,

---

[13] Plaintiffs did not make any allegations in its complaint regarding this argument. In support of its argument, Plaintiffs attached to their brief in opposition a check made payable to Mr. Fuller. (Doc. 25-4.) The court questions its ability to address this argument on a motion for judgment on the pleadings because it involves consideration of factual matters raised outside of pleadings. Nevertheless, for the sake of thoroughness, the court finds no harm in briefly addressing the argument.

there does not appear to be any dispute that the agreements, both of which were made effective on May 1, 2003, are part of the same general business transaction. When read together as one agreement, the 2003 Sales Agreement and the 2003 Employment Agreement pertain to subject matters including the purchase of the RSDIS business, as well as Fuller's employment and post-employment obligations. Accordingly, the 2008 Employment Agreement, which also covers matters of Fuller's employment and post-employment obligations, supersedes all prior agreements relating to the same subject matter by way of its integration clause. This includes the 2003 Agreements. Consequently, the three-year non-compete term in the 2008 Employment Agreement (which also applies to non-solicitation as well) is applicable and the five-year non-compete term in the 2003 Sales Agreement and the two-year non-solicitation term in the 2003 Employment Agreement are superseded. Fuller was contractually required to honor the non-compete and non-solicitation restrictions set forth in the 2008 Employment Agreement through July 10, 2012, or three years from his resignation. Reading the complaint as generously as possible, it appears that Fuller honored these obligations, as the earliest allegation of wrongdoing is August, 2012. Thus, the court finds that Fuller was not in violation of the 2008 Employment Agreement's restrictive covenants. The court will now address the implications of this holding on Plaintiffs' causes of action.

### a.     Breach of Contract against Fuller and Alteris (Count I)

Under Pennsylvania law, a plaintiff asserting a breach of contract must assert: "(1) the existence of a contract, including essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Sypeck v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist LEXIS 83326, *5 (M.D. Pa. June 15, 2012) (quoting

*J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)). Here, Plaintiffs' breach of contract claim is wholly predicated on the applicability of the 2003 Sales Agreement. (*See* Compl. ¶¶ 59, 60) ("Fuller breached the 2003 Agreement by accepting a position with and working with Alteris . . . [and] by soliciting, and/or directing other Alteris employees to solicit, Glatfelter's Special Districts Customers.") However, the 2003 Sales Agreement has been superseded and replaced with the 2008 Employment Agreement. Not a single allegation in the complaint suggests noncompliance with the terms of the 2008 Employment Agreement. To the contrary, the allegations show full compliance and performance with the terms of that contract. Accordingly, Plaintiffs have failed to assert the existence of an *applicable* contract and a breach of a duty imposed by that contract. This claim will therefore be dismissed.

**b.    Negligent Interference with Existing and Prospective Contractual Relations against Alteris (Count II)**

Plaintiffs' claim of negligent interference with existing and prospective contractual relations is legally deficient for multiple reasons. First, Pennsylvania courts generally do not recognize a cause of action for "negligent interference with a contract" and have explicitly held that such claims are barred by the economic loss doctrine. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175-76 (3d Cir. 2008); *Gittens-Altman, A.M.A. v. HCB Contractors*, 1992 U.S. Dist. LEXIS 13431, *4 (E.D. Pa. Sept. 8, 1992); *Aikens v. Balt. & Ohio R.R. Co.*, 501 A.2d 277, 278 (Pa. Super. Ct. 1985). A limited exception to this bar is where a "special relationship" exists among the parties. *See Aikens*, 501 A.2d at 278. A "special relationship" is one involving confidentiality, the repose of special trust, or fiduciary responsibilities. *See Valley Forge Convention & Visitors Bureau v. Visitor's Servs.,*

*Inc.*, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998) (citing *Commonwealth v. E-Z Parks, Inc.*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993)).

Plaintiffs have alleged that "Glatfelter has a special relationship with Fuller that constitutes a confidential or fiduciary relationship where Glatfelter has reposed a special confidence in Fuller, in that he surrendered substantial control over his ability to compete with Glatfelter as specified in the Covenant Not to Compete." (Compl. ¶ 70.) Even if this were true, this cause action implicates Alteris only, not Fuller. Thus, the relevant question is whether Plaintiffs have a special relationship with Alteris. This point is neither pled, nor argued. Absent any allegation of a special relationship as to Alteris, this claim must be dismissed.

Even if Plaintiffs successfully pled the existence of a special relationship, the claim would still fail. The Restatement of Tort explains a "negligent interference with contract or prospective contractual relation" claim as follows:

> *Negligent interference with contract or prospective contractual relation.* One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
> (a) causing a third person not to perform a contract with the other, or
>
> (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
>
> (c) interfering with the other's acquiring a contractual relation with a third person.

*Restatement (Second) of Torts*, § 766C. Plaintiffs aver that Alteris's hiring of Fuller has caused interference with Glatfelter's existing and prospective contractual relationships, and that Alteris knew or should have known that Fuller was bound by

a non-competition agreement, or otherwise acted with reckless disregard as to whether Fuller was bound by a non-competition agreement. (Compl. ¶¶ 72, 73.) Here again, these allegations are dependent on the validity of the five-year restrictive covenant in the 2003 Sales Agreement. For the reasons set forth at length above, the court holds that the 2003 Agreements were superseded and inapplicable, and Fuller was otherwise compliant with the applicable 2008 Employment Agreement. Thus, Fuller was not bound to any non-competition clause during the times of the alleged wrongdoing. This claim therefore fails for this additional reason and must be dismissed.

     **c.**     **<u>Intentional Interference with Existing and Prospective<br>Contractual Relations against Fuller and Alteris (Count III)</u>**

In claiming interference with existing and prospective contractual relations, Plaintiffs are alleging two distinct torts: one pertaining to existing contracts, and one pertaining to prospective contracts. To sufficiently plead either claim, Plaintiffs must allege: (1) the existence of a contractual or prospective contractual relation between itself and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) actual legal damage. *Pilot Air Freight Corp. v. Sandair, Inc.*, 118 F. Supp. 2d 557, 562-63 (E.D. Pa. 2000) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir. 1998)). In addition, for prospective contracts, Plaintiffs must allege a reasonable likelihood that the relationship would have occurred but for the interference of the defendant. *Id.* at 563.

For a claim of interference with an existing contract to withstand 12(b)(6) scrutiny, Plaintiffs must allege the existence of a contractual relationship with an identified third party. Courts have held that because the subject contract actually exists, a claim for intentional interference with contractual relations must include "definite, exacting identification." *Square D Co. v. Scott Elec. Co.*, 2008 U.S. Dist. LEXIS 39974, *13 (W.D. Pa. May 16, 2008) (citing *Kelly-Springfield Tire Co. v. D'Abmro*, 596 A.2d 867, 872 (Pa. Super. Ct. 1991) (dismissing counterclaim for interference with existing or prospective business relations because Defendant "failed to even provide a name with whom the alleged relationship exists.")); *see also Bioquell v. Feinstein*, 2010 U.S. Dist LEXIS 124077, *19 (E.D. Pa. Nov. 23, 2012) (dismissing claim for tortious interference with business relations because "Plaintiff fail[ed] to identify a single contract or client that it lost as a result of Defendants' actions"). Here, Plaintiffs only allege that "Defendants have taken purposeful action specifically intended to harm the existing and prospective relationship between Glatfelter and its existing Customers." (Compl. ¶ 79.) Because Plaintiffs fail to identify a single client, or point to a single contract that was subject to alleged interference, this claim must be dismissed.

Likewise, to claim interference with prospective contractual relations, a plaintiff must "allege a reasonable probability that he would have entered into a contractual relationship with a third party." *Flannery v. Mid Penn Bank*, 2008 U.S. Dist. LEXIS 97978, *26 (M.D. Pa. Dec. 3, 2008). This additional element requires Plaintiffs to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged tortious interference. Plaintiffs complaint does not contain a single factual allegation that would allow the court to

infer that a contractual relationship with a third party was reasonably probable. Thus, this claim must also be dismissed.

### d.    Unfair Competition against Fuller and Alteris (Count IV)

Pennsylvania recognizes a common-law claim of unfair competition under Restatement (Third) of Unfair Competition. *See Binary Semantics Ltd. v. Minitab, Inc.*, 2008 U.S. Dist. LEXIS 28602, *21 (M.D. Pa. Mar. 20, 2008); *Air Prods. & Chem. v. Inter-Chemical Ltd.,* 2003 U.S. Dist. LEXIS 23985, *34 (E.D. Pa. Dec. 2, 2003). The Restatement provides, in relevant part:

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:
>
> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
>
> (1) deceptive marketing, as specified in Chapter Two;
>
> (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;
>
> (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;
>
> or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; or
>
> (b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.

*Restatement (Third) Unfair Competition* § 1(a). Comment (g) to the Restatement explains this broad provision: "[A] competitor who diverts business from another by means of fraudulent misrepresentations or through the wrongful use of confidential

information, for example, may in some circumstances be subject to liability for unfair competition even if the conduct is not specifically actionable under the rules relating to deceptive marketing or appropriation of trade secrets." Nevertheless, the unfair competition doctrine may not be applied as a "virtual catch-all" for any form of wrongful business conduct. *See EXL Labs., LLC, v. Egolf*, 2011 U.S. Dist. LEXIS 25295, *26 (E.D. Pa. Mar. 11, 2011). The gist of an unfair competition claim lies in the deception practiced in "passing off" the goods of one for that of another. *See Pa. State Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 870 (Pa. Super. Ct. 1998). The law of unfair competition also requires that a company, entering a field already occupied by a rival of established reputation, must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rival. *Id.* at 870-71.

Plaintiffs hinge their unfair competition claim on a single allegation that "Defendants have made statements and misrepresentations that '[a]ll of us who had anything to do with creating or marketing the RSDIS program ha[ve] left Glatfelter and are now all together with Alteris Insurance Services p/o the Argo Group.'" (Compl. ¶ 84.) Plaintiffs allege that this statement is either untrue, deceptive, or misleading and represents an attempt to unnecessarily create confusion between their business and Glatfelter's business. (*Id.* ¶¶ 83, 84.) Plaintiffs then inexplicably allege that these actions constituted violations of California Insurance Code § 790.03(b) which prohibits deceptive statements with respect to the business of insurance. (*Id.* ¶ 86.) Although the complaint does contain an allegation that at least some of the deceptive statements were made in California (and distributed in Idaho) (*see id.* ¶ 87), the court cannot otherwise ascertain the applicability of California law

in this matter.  In any event, the court has not found, on the facts alleged, that there has been any misappropriation of trade secrets, breach of contract, infringement of trademarks, interference with contracts, or any other unfair or otherwise actionable conduct to support a claim for unfair competition.  Simply put, a single allegation that Fuller and other representatives of Alteris told Glatfelter's customers that everyone involved in the RSDIS program at Glatfelter had left Glatfelter and was now working at Alteris and Argo Group could not create sufficient confusion in the insurance market to support a claim of unfair competition.  Thus, this claim must be dismissed.

> **e.** **Preliminary and Permanent Injunction against Fuller and Alteris (Count V)**

Plaintiffs' complaint also asserts a claim for preliminary and permanent injunctive relief.  Here again, the sole basis for the request for injunctive relief is Defendants' alleged violation of the five-year non-compete term in the 2003 Agreements.  (*See* Compl. ¶¶ 91, 92) ("Fuller is violating the 2003 Agreement by working for a direct competitor of Glatfelter. . . [and] by soliciting, and/or directing other Alteris employees to solicit, Glatfelter's Special Districts Customers.")  Also before the court is a separate motion for preliminary injunction which is likewise wholly predicated on the validity of the 2003 Agreements.  (Doc. 7.)  The court has also entertained briefing on this issue (*see* Docs. 8 & 26) and scheduled a hearing on the motion for January 4, 2013.  However, having found that the 2003 Agreements are superceded by the 2008 Employment Agreement, this request lacks merit.  Additionally, courts generally dismiss independent claims for preliminary and permanent injunctive relief because an injunction is a remedy, not an independent cause of action.  *See, e.g., Tolia v. Dunkin Brands*, 2011 U.S. Dist. LEXIS 142170,

*18 & n.5 (D.N.J. Oct. 7, 2011) (gathering cases).  For these reasons, the court will dismiss Plaintiffs' claim for injunctive relief, deny Plaintiffs' motion for a preliminary injunction as moot, and cancel the hearing on the motion for preliminary injunction scheduled for January 4, 2013.

III.　　　　**Conclusion**

　　　　Having reviewed the three agreements at issue here and applied the principles of contract interpretation under Pennsylvania law, the court finds that the 2008 Employment Agreement supersedes the 2003 Agreements.  Accordingly, the three-year non-compete term in the 2008 Employment Agreement is applicable to this case.  Having reviewed the complaint, the court finds no allegations that suggest non-compliance with the terms of the 2008 Employment Agreement.  As a result, Plaintiffs' claims for breach of contract (Count I), negligent interference with existing and prospective contractual relations (Count II), and request for injunctive relief (Count V) must be dismissed.  Furthermore, Plaintiffs' claims for intentional interference with existing and prospective contractual relations (Count III) and unfair competition (Count IV) must be dismissed for failure to state a claim.

　　　　An appropriate order will issue.


SYLVIA H. RAMBO
United States District Judge

Dated: December  21  , 2012.

27

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VOLUNTEER FIREMEN'S INSURANCE SERVICES, INC., ARTHUR J. GLATFELTER AGENCY, INC. d/b/a GLATFELTER INSURANCE GROUP, and GLATFELTER UNDERWRITING SERVICES, INC. d/b/a GLATFELTER PUBLIC PRACTICE,** | : : : : : : : : : | **CIVIL NO. 1:12-CV-2016** |
| **Plaintiffs,** | : | |
| **v.** | : : | **Judge Sylvia H. Rambo** |
| **PAUL R. FULLER and ALTERIS INSURANCE SERVICES, INC.** | : : : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, it is

**HEREBY ORDERED** as follows:

1.  Defendants' motion for judgment on the pleadings (Doc. 19) is **GRANTED**;

2.  Plaintiffs' motion for preliminary injunction (Doc. 7) is **DENIED** as moot;

3.  The hearing on the motion for preliminary injunction, scheduled for January 4, 2013, is **CANCELLED**;

4.  The clerk of court is directed to **CLOSE** this case.

SYLVIA H. RAMBO
United States District Judge

Dated: December  ⅟ , 2012.